# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Susan Fischer and Jeanette Speck, on behalf of themselves and those similarly situated, | ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| Phil Murphy, in his official capacity as Governor of New Jersey; New Jersey Education Association; and Township of Ocean Education Association, | ) ) ) ) ) |
| Defendants. | ) ) |

No.:  1:18-cv-15628-RMB-KMW

## PLAINTIFFS' BRIEF IN SUPPORT OF SUMMARY JUDGMENT

Michael P. Laffey
Messina Law Firm, PC
961 Holmdel Road
Holmdel, NJ 07733
Tel (732) 332-9300
mlaffey@messinalawfirm.com

*Attorneys for Plaintiffs*

William L. Messenger
Aaron B. Solem (#0392920)
National Right to Work Legal Defense
 Foundation
8001 Braddock Road, Suite 600
Springfield, VA 22160
Tel (703) 321-8510
wlm@nrtw.org
abs@nrtw.org

# TABLE OF CONTENTS

Page

**FACTS** ........................................................................................................... 1

A. Legal Background ......................................................................................... 1

B. Material Facts. ............................................................................................. 3

**ARGUMENT** ................................................................................................... 4

A. Plaintiffs Should Be Awarded Summary Judgment on Counts I and II. ............. 4

    1. The Revocation Law Is Unconstitutional under the First Amendment ........... 4

    2. The NJEA Violates the First Amendment by Seizing Dues from
       Plaintiffs and Other Nonconsenting Teachers ................................................... 6

B. Plaintiff Teachers and Class Members Did Not Waive Their First Amend-
   ment Right to Refrain from Subsidizing NJEA's Speech ..................................... 7

    1. The Revocation Law Requires Public Bodies to Deduct Dues from
       Individuals After They Provide Notice of Their Opposition to
       Supporting a Union .......................................................................................... 8

    2. Defendants Cannot Prove Employees Waived Their First Amendment
       Right to Refrain from Subsidizing NJEA's Speech ......................................... 9

    3. The Escape Period the Revocation Law Mandates Is Unenforceable
       Because It Impinges on Fundamental First Amendment Interests ............. 13

**CONCLUSION** ............................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

*Abood v. Detroit Bd. of Educ.,*
431 U.S. 209 (1977) ................................................................................ 1

*Atlanta Printing Specialties v. NLRB,*
523 F.2d 783 (5th Cir. 1975) .................................................................. 16

*Coll. Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,*
527 U.S. 666 (1999) ................................................................................ 9

*Curtis Publ'g Co. v. Butts,*
388 U.S. 130 (1967) ....................................................................... 9, 10, 12

*Davies v. Grossmont Union Sch. Dist.,*
930 F.2d 1390 (9th Cir. 1991) ................................................................ 13

*Democratic Nat'l Comm. v. Republican Nat'l Comm.,*
673 F.3d 192 (3d Cir. 2012) ................................................................. 9,12

*Erie Telecom., Inc. v. City of Erie,*
853 F.2d 1084 (3d Cir. 1988) ............................................................... 9, 12

*Felter v. S. Pac. Co.,*
359 U.S. 326 (1959) ............................................................................... 16

*Fuentes v. Shevin,*
407 U.S. 67 (1972) ............................................................................ 10, 11

*Gete v. INS,*
121 F.3d 1285 (9th Cir. 1997) ............................................................... 11

*Janus v. AFSCME Council 31,*
138 S. Ct. 2448 (2018) ....................................................................*passim*

*Johnson v. Zerbst,*
304 U.S. 458 (1938) ........................................................................... 9, 12

*Knox v. SEIU Local 100,*
567 U.S. 298 (2012) ........................................................................... 9, 15

## TABLE OF AUTHORITIES (Cont.)

**Page(s)**

*Legal Aid Soc'y v. City of N.Y.*,
114 F.Supp.2d 204 (S.D.N.Y. 2000) ...................................................................... 12

*Monroe Lodge No. 770 v. Litton Bus. Systs., Inc.*,
334 F. Supp. 310 (W.D. Va. 1971), *aff'd & remanded*, No. 71-2063,
1972 WL 3025 (4th Cir. May 15, 1972)................................................................. 16

*Moran v. Burbine*,
475 U.S. 412 (1986) ......................................................................... 10, 11, 13

*Town of Newton v. Rumery*,
480 U.S. 386 (1987) .................................................................................. 13, 17

CONSTITUTION
   U.S. Const. amend. I .....................................................................*passim*

STATUTES
   29 U.S.C. § 186(c)(4) ..................................................................................... 16
   45 U.S.C. § 152 Eleventh(b) .......................................................................... 16
   N.J. Stat. Ann. §§ 34:13A-1-5.6 to 5.8 ....................................................... 3,13
   N.J. Stat. Ann. § 52:14-15.9e .....................................................................*passim*

The Supreme Court in *Janus v. AFSCME Council 31* held it unconstitutional for the government to deduct union payments from nonconsenting employees. 138 S. Ct. 2448, 2486 (2018). Section 6 of New Jersey's Workplace Democracy Enhancement Act ("WDEA") mandates that public employers deduct union dues from employees who provide notice they do not consent to those deductions, unless that notice is given during a 10-day period. N.J. Stat. Ann. § 52:14-15.9e. The nonconsensual dues deductions required by WDEA Section 6 violate employees' First Amendment rights under *Janus* to refrain from subsidizing union speech. Defendant New Jersey Education Association's ("NJEA's") collection of dues seized from nonconsenting employees likewise violates the First Amendment. The Plaintiff Teachers thereby move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on their first and second causes of action and request Defendants' conduct be held unconstitutional.

## FACTS

### A.    Legal Background

In spring 2018, the Supreme Court was poised to overrule *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) and hold it unconstitutional for unions to seize dues from nonconsenting employees. "[U]nions have been on notice for years regarding th[e Supreme] Court's misgivings about *Abood*." *Janus*, 138 S. Ct. at 2484. In 2014, the Court "cataloged *Abood's* many weaknesses" and almost overruled it. *Id*. In 2016, following the death of Justice Scalia, the Court split 4-4 on whether to overrule *Abood*. *Id*. at 2485. The grant of certiorari in *Janus* signaled that, by the end of the Court's term in June 2018 if not earlier, the Court would hold public employees have a First Amendment right not to subsidize union speech.

In May 2018, newly-elected New Jersey Governor Phil Murphy and the state legislature preemptively moved to undermine the employee rights the Court would soon recognize in *Janus* by enacting the WDEA, P.L. 2018, c.15, § 6, eff. May, 18, 2018. In addition to requiring compulsory union orientations for employees and other measures, the WDEA forbids public employees from stopping the deduction of union dues from their wages for 355-56 days of each year.

Specifically, Section 6 of the WDEA amended New Jersey Statute Annotated Section 52:14-15.9e, which requires that the State and other public bodies, upon receiving written authorization from an employee, deduct union dues from that employee's wages. Prior to being amended, the statute provided that:

> Any such written authorization may be withdrawn by such person holding employment at any time by the filing of notice of such withdrawal with the above-mentioned disbursing office. The filing of notice of withdrawal shall be effective to halt deductions as of the January 1 or July 1 next succeeding the date on which notice of withdrawal is filed.

*Id*. (prior to amendment by P.L. 2018, c.15, § 6, eff. May 18, 2018). Section 6 of the WDEA replaced the foregoing paragraph with the following:

> Employees who have authorized the payroll deduction of fees to employee organizations may revoke such authorization by providing written notice to their public employer during the 10 days following each anniversary date of their employment. Within five days of receipt of notice from an employee of revocation of authorization for the payroll deduction of fees, the public employer shall provide notice to the employee organization of an employee's revocation of such authorization. An employee's notice of revocation of authorization for the payroll deduction of employee organization fees shall be effective on the 30th day after the anniversary date of employment.

N.J. Stat. Ann. § 52:14-15.9e (as amended by P.L. 2018, c.15, § 6, eff. May, 18, 2018).

Hereinafter, this paragraph shall be referred to as the "Revocation Law."

### B.    Material Facts

Plaintiffs Susan Fischer and Jeanette Speck are teachers employed by the Township of Ocean Board of Education ("Township") in Monmouth County, New Jersey. Pls' Statement of Material Facts ¶ 1. Prior to *Janus*, Plaintiff Teachers and their co-workers were required to subsidize the NJEA and its affiliates pursuant to New Jersey Statute Annotated Sections 34:13A-1-5.6 to 5.8, which authorized the deduction of union representation fees from the wages of public employees who are not union members. Pls' Statement of Material Facts ¶ 8. Given that monies for the NJEA would be taken from their wages in any case, the Plaintiff Teachers signed forms authorizing the deduction of union dues from their wages. *Id*. at ¶¶ 3, 8.

The Plaintiff Teachers' dues deduction forms do not state that the signatory agrees to waive her First Amendment right to refrain from subsidizing union speech or agrees to abide by the escape period required in the Revocation Law. *Id*. at ¶¶ 3-4. NJEA dues deduction forms used prior to the Supreme Court's June 27, 2018 decision in *Janus* and New Jersey's May 18, 2018 enactment of the Revocation Law do not include such language. *Id*. at ¶¶ 5-7.

In July 2018, after *Janus* was decided, Plaintiff Teachers notified the NJEA and their employer that they were resigning their union membership and did not want union dues deducted from their wages. *Id*. at ¶ 9. The Township informed the Plaintiff Teachers it would not honor their revocation requests because they were made outside the 10-day escape period specified in the Revocation Law. *Id*. at ¶ 10.

In early September 2018, during what they calculated to be their escape period, the Plaintiff Teachers again provided notice that they did not consent to having union dues deducted from their wages. *Id*. at ¶ 11. However, under the Revocation Law, even their second revocation request could not be honored until the "30th day after the anniversary date of employment." N.J. Stat. Ann. § 52:14-15.9e. Union dues were thus deducted from their wages in September 2018, after which the deductions stopped. Pls' Statement of Material Facts ¶ 12.

On November 1, 2018, Plaintiff Teachers filed this lawsuit on behalf of themselves and a Class of similarly situated teachers who, after *Janus* was decided, had NJEA dues deducted from their wages after they provided notice that they opposed those deductions. Complaint ¶ 35, ECF No. 1. As relevant here, Plaintiff Teachers allege it violates the First Amendment for New Jersey to maintain and enforce its Revocation Law, *see id*. at ¶ 45 (Count I), and for NJEA to collect and cause the deduction of union dues from Plaintiffs and Class members, *see id*. at ¶ 47 (Count II).[1]

## ARGUMENT

### A.  Plaintiffs Should Be Awarded Summary Judgment on Counts I and II.

1.  The Revocation Law Is Unconstitutional under the First Amendment.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56 if there are no disputes over material facts and the moving party is entitled to a judgment as a matter of law. The Plaintiff Teachers should be awarded summary judgment on their first cause of action. It is unconstitutional for New Jersey to prohibit

---

[1] Plaintiff Teachers are not moving for summary judgment on Count III.

employees from exercising their First Amendment rights under *Janus* for 355-56 days of each year.

*Janus* concerned an Illinois statute under which that state, in coordination with unions, deducted union fees from employees' wages without proof of their consent. 138 S. Ct. at 2486. The Supreme Court held "[t]his procedure violates the First Amendment" and that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Id*. The Court further held that consent to dues deduction requires a waiver of First Amendment rights, *id*., as discussed in greater detail in Section B(2), *infra*.

The Revocation Law's sole effect is to require that public employers deduct union dues from employees who provide notice they do not consent to paying union dues outside the 10-day period. Under the Revocation Law, the State and other public employers must disregard employees' objections to financially supporting a union, and continue to seize union dues from them against their wishes. The Revocation Law compels unwilling employees to subsidize union speech, which violates the First Amendment rights under *Janus*, 138 S. Ct. at 2486.

If anything, the government conduct the Revocation Law requires is even more egregious than the conduct found unconstitutional in *Janus*. Illinois' law required the state to deduct union fees from individuals without their permission. *Id*. New Jersey's Revocation Law requires public employers to deduct union dues from individuals over

their affirmative and express objections. The Revocation Law should be declared un-constitutional and its enforcement permanently enjoined.

2.   The NJEA Violates the First Amendment by Seizing Dues from Plaintiffs and Other Nonconsenting Teachers.

The NJEA, by collecting and having public employers deduct union dues from the Plaintiff Teachers and prospective Class members, has violated those teachers' First Amendment rights under *Janus*. The Plaintiff Teachers twice provided notice that they object to subsidizing the NJEA. *See* Pls' Material Facts ¶¶ 9-11. The putative Class, by definition, consists of teachers "who, at any time after June 27, 2018, pro-vided notice that they did not consent to the deduction of union dues from their wages and subsequently had union dues deducted from their wages and remitted to the NJEA and its affiliates." Compl. ¶ 31. Plaintiff Teachers and prospective Class mem-bers were all compelled by NJEA to subsidize its advocacy against their will, and in violation of their First Amendment rights under *Janus*.

The NJEA claims, in a parallel case before this Court, that the union permits teachers who signed dues deduction forms prior to the Revocation Law's enactment to stop dues deductions pursuant to the terms of the prior law—i.e., by written notice effective January 1 or July 1. *See* Cert. of Damien McKeever ¶¶ 8-10, ECF No. 87-1, *Smith v. NJEA*, No. 18-cv-10381 (D.N.J. Sept. 28, 2018). NJEA asserts its dues de-duction forms used prior to August 2018 incorporated the prior law's language, and stated "[t]his authorization may be terminated only by prior written notice from me effective January 1 or July 1 of any year." *Id*. at ¶ 8.

NJEA's policy does not save the Revocation Law, which controls the conduct of the governmental bodies that deduct union dues from employees' wages. N.J. Stat. Ann. § 52:14-15.9e. The law provides only for a 10-day escape period to stop dues deductions and mandates that "[a]n employee's notice of revocation of authorization for the payroll deduction of employee organization fees *shall* be effective on the 30th day after the anniversary date of employment." *Id.* (emphasis added). Irrespective of NJEA's policy, public employers are bound to the Revocation Law's strictures, as the Plaintiff Teachers' experience demonstrates.

NJEA's policy also does not save it from Plaintiff Teachers' second cause of action, which asserts the NJEA and its affiliates violate the First Amendment "by collecting and having public employers deduct union dues from Plaintiffs and Class members." Compl. ¶ 47. Regardless of whether NJEA seized dues from these nonconsenting teachers pursuant to either the Revocation Law or its alleged policy, the relevant fact is that NJEA took their money over their objections. By so doing, the NJEA violated the Plaintiff Teachers and Class members' First Amendment rights.

**B.    Plaintiff Teachers and Class Members Did Not Waive Their First Amendment Right to Refrain from Subsidizing NJEA's Speech.**

In *Smith*, the NJEA argued the Revocation Law is constitutional under *Janus* because it applies to employees who initially authorized dues deductions. *See* NJEA Br. in Supp. of Partial Mot. to Dismiss at 19-32, ECF No. 86-1, *Smith*, No. 18-cv-10381 (D.N.J. Sept. 28, 2018). The argument is unavailing for three reasons. *First*, initial consent to dues deductions does not justify nonconsensual deductions made

after employees provides notice of their opposition to supporting a union. *Second*, Defendants cannot prove teachers waived their First Amendment right to refrain from subsidizing union speech, which is a pre-requisite to establishing consent to dues deduction under *Janus*, 138 S. Ct. at 2486. *Third*, even if Defendants could prove a valid constitutional waiver, the escape period prescribed in the Revocation Law is unenforceable as against public policy.

1. The Revocation Law Requires Public Bodies to Deduct Dues from Individuals After They Provide Notice of Their Opposition to Supporting a Union.

The proposition that employees initially authorized union dues deductions, even if true, would not justify the deduction of dues from those employees *after* they provide notice of their opposition to supporting the union. All government dues deductions made after that notice is given are nonconsensual. Consequently, all such deductions are unconstitutional under *Janus*, for the government will be compelling those employees to support union speech against their wishes.

The sole effect of the Revocation Law is to require governmental bodies to deduct union dues from employees after they provide notice of their opposition to supporting the union. Irrespective of the validity of employees' initial authorization of dues deductions, that action violates employees' First Amendment rights.

Given the foregoing, it is not enough for Defendants to aver that Plaintiff Teachers and other employees authorized dues deduction in the past. At a minimum, to justify the deduction of dues over their subsequent objections, Defendants must also prove the employees agreed to restrict their future exercise of their First Amendment right

to refrain from subsidizing the union's speech—i.e., that they waived their constitutional rights under *Janus*. As discussed below, Defendants cannot make this showing.

> 2. **Defendants Cannot Prove Employees Waived Their First Amendment Right to Refrain from Subsidizing NJEA's Speech.**

a. In *Janus*, the Supreme Court held that proving an individual "affirmatively consents to pay" union dues requires clear and compelling evidence of a First Amendment waiver. 138 S. Ct. at 2486. The Court explained that:

> By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); see also [*Knox v. SEIU Local 100*, 567 U.S. 298, 312–313 (2012)]. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145 (1967) (plurality opinion); see also *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 680–682 (1999). Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Id*. This waiver requirement makes sense, and not just because the Supreme Court said it does. Given that individuals have a First Amendment right not to subsidize union speech, it follows that a waiver of that right is required for the government to take monies from individuals for union speech.

The criteria for a constitutional waiver is well-established. "The Supreme Court has long recognized that a party may waive constitutional rights if there is 'clear' and 'compelling' evidence of waiver and that waiver is voluntary, knowing, and intelligent." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012) (footnotes omitted). This is an exacting standard, greater than that required to show formation of a contract under state law. *See Erie Telecom., Inc. v. City of Erie*,

853 F.2d 1084, 1094 (3d Cir. 1988). "[C]ourts must 'indulge every reasonable presumption against waiver' of fundamental constitutional rights." *Democratic Nat'l Comm.*, 673 at 205 (quoting *Johnson*, 304 U.S. at 464).

Importantly, "the burden of proving the validity of a waiver of constitutional rights is always on the *government.*" *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Thus, to establish initial employee consent to dues deductions and to restrictions on later stopping those deductions, Defendants must prove, by clear and compelling evidence, that the Plaintiffs Teachers and Class members voluntarily, knowingly, and intelligently agreed to waive their First Amendment right to not subsidize the NJEA's speech.

b. The State and NJEA cannot satisfy their burden of proof. They cannot prove Plaintiff Teachers consented to the Revocation Law's escape period, under which they can only stop paying NJEA dues during a 10-day period, because their dues deduction forms contain no language to that effect. *See* Pls.' Decls. Ex. A (Plaintiffs' dues deduction forms). The same is true of dues deduction forms used prior to the Revocation Law's enactment. Pls.' Material Facts ¶ 6.

Defendants cannot even show valid consent to dues deductions in the first instance because "the NJEA membership forms Plaintiffs signed did not state that employees had a First Amendment right not to subsidize the union and its speech or that the signatory was waiving that right by agreeing to the deduction of union dues from their wages." NJEA Answer, ¶ 21 (ECF No. 23). This fatal defect means the forms do not amount to "'clear and compelling' evidence'" of a waiver. *Janus*, 138 S. Ct. at 2486 (quoting *Curtis Publ'g*, 388 U.S. at 145). "[A] waiver of constitutional

rights in any context must, at the very least, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972). The court "need not concern [itself] with the involuntariness or unintelligence of a waiver when the contractual language relied upon does not, on its face, even amount to a waiver." *Id.* The absence of language in dues deduction forms stating that signatories are waiving their First Amendment right not to subsidize the NJEA alone renders them inadequate to establish a waiver.

A "knowing" and "intelligent" waiver cannot be proven for similar reasons. The criteria require proof of "*a full awareness* of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421 (emphasis added). Defendants cannot prove Plaintiff Teachers and Class members were "fully aware[ ]" of their First Amendment rights when nothing on their dues deduction forms notified them of their rights. *See Gete v. INS,* 121 F.3d 1285, 1294 (9th Cir. 1997) (no waiver where plaintiffs did not "receive[ ] any notice whatsoever that they were waiving their right to challenge the lawfulness of the process itself, let alone all of their rights under the first ten amendments to the Constitution.").

The situation at bar parallels that in *Fuentes*, wherein the Supreme Court held that prejudgment replevin terms of a sales contract did not establish a valid due process waiver because there was no showing that purchasers "were actually aware or made aware of the significance of the fine print now relied upon as a waiver of constitutional rights," and because "[t]here was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power." 407 U.S. at 92. The situation here is unlike that where waivers were found: "'where the

parties to the contract have bargaining equality and have negotiated the terms of the contract, and where the waiving party is advised by competent counsel and has engaged in other contract negotiations." *Democratic Nat'l Comm.*, 673 F.3d at 205 (quoting *Erie Telecom*, 853 F.2d at 1096). Plaintiff Teachers and Class members do not have equal bargaining power with their employers and NJEA, do not bargain over dues deduction terms, and do not usually act with the guidance of counsel.

c. There is yet another reason why Defendants cannot prove Plaintiff Teachers and most Class members knowingly and intelligently waived their First Amendment rights: they signed dues deduction forms *before* New Jersey enacted the Revocation Law in May 2018, and *before* the Supreme Court issued *Janus* on June 27, 2018. A waiver must amount to an "intentional relinquishment or abandonment of *a known* right or privilege." *Johnson*, 304 U.S. at 464 (emphasis added). To state the obvious, individuals cannot knowingly and intelligently agree to abide by restrictions that do not yet exist. Nor can individuals knowingly and intelligently waive First Amendment rights yet to be recognized. *See Curtis Publ'g*, 388 U.S. at 143-45 (holding a defendant did not knowingly waive a First Amendment defense at trial because the defense was recognized after the trial had concluded); *Legal Aid Soc. v. City of N.Y.*, 114 F.Supp.2d 204, 227-28 (S.D.N.Y. 2000) (holding a contractor did not knowingly waive a First Amendment right because that right "was not clearly established until after the signing of the agreement").

The voluntariness of dues deduction forms the Plaintiff Teachers and others signed prior to *Janus* are suspect on similar grounds. Prior to *Janus*, Plaintiff Teachers were unconstitutionally required to pay union fees equal to up to 85% of union dues if they did not join the union. *See* N.J. Stat. Ann. §§ 34:13A-1-5.6 to 5.8. A teachers' decision to join the NJEA and authorize dues deductions cannot be considered voluntary when faced with this unlawful alternative. For example, if an online company unlawfully threatened to unilaterally deduct $100 from individuals' bank accounts if they did not agree to purchase a $125 service, no one would say those who acquiesced to the service did so voluntarily.[2]

Overall, Defendants face an imposing, if not insurmountable, burden of proof if they argue the Plaintiff Teachers and prospective Class members consented to restrictions on their right to not support NJEA's speech. But even in the unlikely event Defendants produce clear and compelling evidence that teachers voluntarily, knowingly, and intelligently agreed to waive their First Amendment rights under *Janus*, the escape period mandated by the Revocation Law would still be unenforceable.

3. The Escape Period the Revocation Law Mandates Is Unenforceable Because It Impinges on Fundamental First Amendment Interests.

Where the criteria for a waiver of constitutional rights are satisfied, a waiver is nevertheless unenforceable "if the interest in its enforcement is outweighed in the

---

[2] Defendants may argue that whether employees voluntarily acquiesced to dues deductions will vary amongst those employees. That argument would not help the Defendants because they bear the burden of proving voluntariness and the other prerequisites for a First Amendment waiver. *See Moran*, 475 U.S. at 421. If Defendants cannot prove each employee voluntarily signed a dues deduction authorization, then the deduction of dues from those individuals is unconstitutional.

circumstances by a public policy harmed by enforcement of the agreement." *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987); *see Davies v. Grossmont Union Sch. Dist.*, 930 F.2d 1390, 1397-99 (9th Cir. 1991). The constitutional interests harmed by prohibiting employees from exercising their First Amendment right to refrain from subsidizing union speech for 355-56 days of each year greatly outweigh any ostensible union benefit that may inure from this onerous burden on speech rights.

a. The policy weighing against enforcement of the revocation policy is of the highest order: employees' First Amendment right not to subsidize speech they do not wish to support. "Compelling individuals to mouth support for views they find objectionable violates . . . [a] cardinal constitutional command." *Janus*, 138 S. Ct. at 2463. "[C]ompelling a person to subsidize the speech of other private speakers raises similar First Amendment concerns." *Id*. at 2464. "As Jefferson famously put it, 'to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical.'" *Id*. The sole effect of the Revocation Law is to compel employees to furnish contributions of money to propagate NJEA speech the employees do not want to support.

For example, the Court would not countenance enforcing a law prohibiting public employees from stopping deductions of monies from their wages for a state-favored political party or political action committee, excepting a 10-day period. What Governor Murphy and the New Jersey legislature are requiring in the Revocation Law is constitutionally indistinguishable: they are compelling unwilling employees to support state-favored political advocacy groups. *See id*. at 2477 (recognizing union speech

is "overwhelmingly of substantial public concern"); *id.* at 2484 (recognizing parallel between compelling employees to support public unions and political parties).

b. There is no countervailing interest in enforcing the Revocation Law's escape period, which exists for the illegitimate purpose of impeding employees' right to stop subsidizing union speech. In *Smith*, NJEA argued the escape period serves union administrative and financial planning purposes. NJEA Br. in Supp. of Partial Mot. to Dismiss at 25-26, ECF No. 86-1, *Smith*, No. 18-cv-10381 (D.N.J. Sept. 28, 2018). That makes little sense. Disregarding employee revocation notices sent prior to 10-days before an anniversary date serves neither purpose. If anything, dictating that employees cannot provide notice earlier than 10-days before a given date, as opposed to allowing employees to provide more advance notice, makes it more difficult for unions to predict and plan for employee withdrawals of financial support.

The notion that the Revocation Law serves union financial planning purposes also is belied by the fact that the 10-day escape period is not fixed to a firm date, but varies based on each employee's "anniversary date of . . . employment." N.J. Stat. Ann. § 52:14-15.9e. This means there are up to 365 different 10-day escape periods opening and closing throughout each year. That does not facilitate financial planning.

In any event, union pecuniary self-interests do not outweigh First Amendment speech rights. In *Knox*, the Supreme Court held a union's interests in collecting fees from employees, to which the union arguably was entitled under state law, did not outweigh nonconsenting employees' interest in not paying those fees. 567 U.S. at 321.

The reason is that only the employees, and not the union, had any constitutional interests at stake. *Id*. The same is true here.

c. Defendants may point to federal statutes that allow union dues deduction authorizations to be made irrevocable for one year. *See* 29 U.S.C. § 186(c)(4); 45 U.S.C. § 152 Eleventh(b). The existence of those statutes says nothing about the constitutionality of the government deducting dues from dissenting public-sector employees under the First Amendment in the wake of *Janus*. The federal statutes also are distinguishable because they do not mandate escape periods, but only that dues deduction authorizations can have a one-year duration. The Revocation Law is far more onerous, as it dictates that New Jersey public employers cannot honor employee revocation notices sent outside a 10-day annual period.

In fact, restrictions on when and how employees can provide notice of revocation often have been held unenforceable under the federal statutes. *See Felter v. Southern Pacific Co.*, 359 U.S. 326, 334 (1959); *Atlanta Printing Specialties v. NLRB*, 523 F.2d 783, 786-87 (5th Cir. 1975); *Monroe Lodge No. 770 v. Litton Bus. Sys., Inc.*, 334 F. Supp. 310, 314–17 (W.D. Va. 1971), *aff'd & remanded*, No. 71-2063, 1972 WL 3025 (4th Cir. May 15, 1972). In *Felter*, the Supreme Court held it unlawful for a union and employer to refuse to honor employee revocation requests not sent in a prescribed manner, because the parties lacked legitimate reason "to treat as nullities revocation notices which are clearly intended as such and about whose authenticity there is no dispute." 359 U.S. at 335. So too here, there is no legitimate reason for refusing to

honor employee revocation notices sent outside 10-day periods, much less one suffi-cient to outweigh employees' First Amendment right to not support union speech.

For these reasons, in the unlikely event the Defendants can prove Plaintiff Teach-ers and Class members waived their First Amendment rights and agreed to abide by the Revocation Law's strictures, any interest in enforcing those strictures "is out-weighed in the circumstances by a public policy harmed by enforcement of the agree-ment." *Rumery*, 480 U.S. at 392. The Revocation Law is thus unconstitutional not only as applied to Plaintiff Teachers and Class members, but also on its face.

## CONCLUSION

The Court should award the Plaintiff Teachers summary judgment on Com-plaint Counts I and II and grant Plaintiffs, and Class members if the Court certifies the proposed Class, the relief requested in the Complaint.

Dated April 3, 2019                    Respectfully submitted,

/s/ Michael P. Laffey
Michael P. Laffey                      William L. Messenger (*pro hac vice*)
Messina Law Firm PC                    Aaron B. Solem (*pro hac vice*)
961 Holmdel Road                       National Right to Work Legal Defense
Holmdel, NJ 07733                        Foundation
Tel (732) 332-9300                     8001 Braddock Road, Suite 600
mlaffey@messinalawfirm.com             Springfield, VA 22160
                                       Tel (703) 321-8510
                                       wlm@nrtw.org
*Attorneys for Plaintiffs*             abs@nrtw.org